*Duncan* for plaintiffs; *Guthrie* for defendant.

Boyce's ex'x.<br><i>vs</i><br>Waller.

---

## Boyce's Executrix *vs* Waller.

### ERROR TO THE FAYETTE CIRCUIT.

*Fraud. Fraudulent conveyance. Purchaser.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

THIS case was once before in this Court, and the opinion then rendered will be found in 9 *Dana*, 478.

After the return of the case to the Court below *Waller* and the executrix of *Daniel Boyce* submitted to the decision of the Circuit Judge, certain admitted facts, and agreed that, without any supplemental pleading or further

CHANCERY.<br><br>Case 44.<br><br>October 18.<br><br>The case stated.

preparation, such a decree might be made between those parties as those facts and the former opinion of this Court should authorize.

The effect of *Boyce's* purchase under the execution against *M'Kinney* was left, by the agreement, to be decided on the facts appearing in the record, when the case was first decided by this Court; and this involves the first and principal question for decision on the agreed case. The executrix contends that *M'Kinney's* entire interest was sold under execution, and that, therefore, as this Court had since determined that his previous conveyance, in trust for himself for life, remainder to his appointees or to his wife's children in the event of a non-appointment, was void as to his creditors, the absolute title had passed to her testator, in virtue of his purchase under the execution of one of those creditors. But *Waller* insists that *Boyce* bought only such vendible interest as *M'Kinney* was supposed to possess *under his said conveyance* in trust, the validity of which had not been assailed by the said execution creditor—and therefore, he argues, that this deed being void as to himself, *Boyce* acquired no interest against him as one of *M'Kinney* precedent creditors.

It was agreed that *Boyce* and his executrix had enjoyed, ever since his purchase, the profits of the slaves bought by him under the execution against *M'Kinney*, and that if, in any form of suit, either at law or in chancery, *Waller* could recover those profits or any portion thereof, a decree might be rendered accordingly, on the agreed facts.

The Circuit Judge seems to have decided that, as against *Waller* as a judgment creditor of *M'Kinney*, *Boyce* had acquired no title, and therefore, decreed the subjection of the slaves to sale for satisfying his judgment, and also decreed in his favor, against the executrix, $1500 as the conventional balance of the amount of the profits after deducting the sum which had been paid by Boyce to *M'Kinney's* execution creditor, for whose benefit the slaves &c. had been sold.

The executrix now complains that this last decree on the agreed facts is altogether erroneous.

It does not appear, and should not be presumed from the facts exhibited, that, at the time of Boyce's purchase or before, there had been any question as to the validity of the trust conveyance of 1827; and the sheriff's deed to *Boyce* recites that he had bought *M'Kinney's interest* in the property *designated in his said conveyance of 1827.* Moreover, *Boyce*, in his bill, suggested that he had bought *an equity supposed to exist in M'Kinney under that deed,* and to be vendible under the the execution; and *the original bill claims an enforcement of the trusts created by that deed.* From these circumstances we cannot resist the conclusion that, in the sale to *Boyce*, the validity of the deed of 1827 was recognized, and that *M'Kinney's* trust estate for life therein was alone sold under the execution; and consequently, *M'Kinney* being now dead, *Boyce's* interest as purchaser under the execution has ceased, and the property so bought by him is subject to *Waller's* judgment, according to the former opinion of this Court. There seems, therefore, to have been no error in decreeing the sale of that property for *Waller's* benefit.

But it does seem to us that there is error in the decree for profits.

Whenever, by *M'Kinney's* death, *Boyce's* title as purchaser under execution had expired, his continued retention and use of the purchased property may have subjected him, as *executor de son tort,* for the profits actually received by him. And, in this aspect of the agreed case and to this extent, the decree in *Waller's* favor for profits admitted to have been received by *Boyce* may be proper.

But *Boyce* either purchased the entire title which *M'Kinney's* creditors had a right to sell, on the hypothesis that the whole title was still in the debtor for the benefit of those creditors, or he purchased *M'Kinney's* trust estate for life, purporting to have been reserved to him by the conveyance of 1827, and which was certainly subject to sale under execution against him.

And if, as we presume, he bought only the latter interest, then admitting that, so far as *M'Kinney's* creditors were concerned, a greater interest was and is still subject

to sale, surely a sale of only a life estate was not void merely because a larger estate might have been sold, had the execution creditor thought fit to attempt such a sale. The fact that the conveyance of 1827 may have been void as to M'Kinney's creditors, cannot affect the validity or the value of Boyce's purchase—for he bought only a part of that entire interest, the right to sell which resulted from avoiding that conveyance. He did not purchase an interest which would not have existed in *M'Kinney* and been subject to sale independently of the void deed of trust; but he bought only that which would have been subject to sale under execution against M'Kinney, had that deed never been made.

A *bona fide* purchaser of property, fraudulently conveyed, is entitled to protection against a defrauded creditor, who can pursue the property only in the hands of the fraudulent party or his alienees, without consideration or with notice of the fraud.

But moreover, as a *bona fide* purchaser, without notice of the invalidity of the deed of trust, *Boyce* might have been entitled to protection against the creditors of *M'Kinney*, even had the interest which he so bought been created by or existed only under the deed which any one of those creditors may avoid; for it is settled that such a purchaser of property, fraudulently conveyed to his vendor, is entitled to protection against the defrauded creditor, who can pursue the estate only in the hands of the fraudulent party or his alienees, without valuable consideration or with notice of the fraud.

We are, therefore, of the opinion that *Boyce* used the slaves properly in his own exclusive right during the life of *M'Kinney*, who lived several years after the date of the sale under execution in 1828; and that, consequently, he was not, as *executor de son tort* or otherwise, responsible to *Waller* for the profits which accrued during *M'Kinney's* life.

And, therefore, as it appears probable and almost certain that the amount decreed against the executrix in this case exceeds the aggregate of the profits accruing since M'Kinney's death, the decree for $1500 must, on this ground, be reversed, and the cause remanded for a further decree in this branch of the case, according to the principles of the foregoing opinion.

*Owsley and Pindell* for appellant; *Robinson & Johnson* for appellee.